ROBERT L. BLAND, Judge.''
Claimant Earle Hutchison seeks an award in this case of $5,000.00 by way of damages for personal injuries sustained on the 9th day of January, 1946, when he, with other persons, was driving in an automobile on U. S. route 19-21 in Fayette county, West Virginia. He contends that as he was riding as a guest in said automobile, owned by one Bruce Robertson, he was injured when the vehicle turned over an embankment by reason of striking a broken portion of the highway. He maintains that it was the duty of the road commission to keep said highway in a reasonably safe condition of repair, but that on account of its failure and neglect to do so, at the time and place of the accident, a portion of the pavement or concrete of said highway had broken, thereby causing a large hole in said highway and that when the automobile struck said hole it turned over said embankment, causing the injuries of which he complains and for which he thinks he should have an ap *218 propriation of the public revenues. The road commission controverts his right to such an award.
Claimant is a musician. He was a member of a six-piece band or orchestra, conducted by Messrs. Bruce Robertson and Brady Frazier, and composed of five male and one female persons, who were engaged in a common adventure or purpose. This band or orchestra played for dances in various sections. On the night of the accident it had an engagement to play for a dance at Beckley. The party left Charleston at four-thirty or five o’clock in the afternoon, traveling in a 1938 model four-door Ford automobile. The vehicle had a small one-ton two-wheel tráiler attached, for the purpose of carrying musical instruments. Claimant was seated in the rear on the right side of the automobile, which was driven by Clarence Parish, who resides at Littlepage Terrace, in the city of Charleston. The night was clear.
When the automobile reached a point on an eight per cent grade on the highway, about two-tenths of a mile south of Fayetteville, in the neighborhood of seven o’clock P. M., if hit a broken place in the concrete pavement which the evidence describes as a hole. One of the occupants of the automobile testified that this hole "started in the middle of the road on the left of the right-hand side lane and stretched all the way across.’’ The same witness also stated that after the au'omobile hit this hole it con inued to run on the paved portion of the highway fifteen or twenty feet and then went out on the shoulder and travelled on the shoulder approximately forty to fifty feet before the vehicle turned over. The claimant was asleep in' the car at the time.
The driver of the automobile testified that as he approached the place where the accident happened, driving at a speed of from thirty (o thirty-five miles an hour, he saw a black piase in the highway — "because the pavement is white" — and it looked like water on the road until he got right at it and it was Loo late to stop, and when the car hit the hole i: knocked the wheel from his hand and the car veered to the right and *219 went out on the shoulder and right over the embankment headfirst.
When asked what caused the car to turn over, ihc driver of the vehicle replied: "Well, sir, the rear tire blew out, was one cause of it. The hole — when we hit this hole, 1 lost control of the car; it jerked the wheel out of my hand, and my left rear tire blew off, was the — ■—•”
We have heretofore held that no duty, express or implied, rests upon the state road commission of West Virginia to maim tain the highways under its jurisdiction in more than reasonably sate condition for use in the usual manner and by the ordinary methods of travel; and the state does'not guarantee freedom from accident of persons travelling on such highways. Charlton. Admx. v. Road Commission, case No. 483.
The road under consideration is a well constructed primary highway. The paved portion thereof is built of concrete of the width of twenty feet. There are two lanes, each ten feet wide, with berms on either side. It is an extensively used and travelled road. There is heavy hauling over it. Heat causes the concrete to expand and from time to time rough places and depressions are thus caused. The “hole'' complained of in the present instance was the result of heat expansion and heavy traffic. It extended for the greater part of the width of one lane, but could not be said to constitute a hazard to any one using the road with prudence and caution. The road commission had, however, repaired the road at the place of the "hole” several times before the accident happened. When heat caused it to "blow up” in July, 1 945, five feet- of the concrete pavement were cut out and filled with “black top” tar and limestone chips. It had to be repaired again in the following November. Further repairs were made in December, 1945. And it was again repaired in the first week of January, 1946, prior to the accident, at which time the depression was filled with pre-mix or amacite. We think it may be reasonably said that the road commission was duly diligent in making repairs to this particular section of the road when we understand that there are a hundred and *220 fifty-four miles of primary roads in Fayette county to look after and keep in order.
The evidence is conflicting in respect to the speed of the automobile at the time of the accident. Claimant’s testimony would fix the speed at between thirty and thiry-five miles an hour. Two eyewitnesses to the accident fixed the speed at a higher rate. When the accident happened Albert Moran was right above it. He estimated the speed of the car at fifty or sixty miles an hour, George F. Olds who stood near Moran and slightly behind him, estimated the car speed at forty-five or fifty miles an hour. Claimant himself testified that the automobile was traveling between thirty and thirty-five miles an hour, but since he was asleep when the accident happened his testimony could not be given much weight. Physical facts sometimes speak louder than words. The automobile did not turn over at the point where it struck the depression or hole in the road. F. E. Springer, a member of the state police, made an investigation of the accident immediately after it happened. He also made measurements and submitted to his department his findings. He stated that after the automobile hit the hole in the road it traveled for a distance of one hundred and two feet from the hole to where the the righthand wheels started over the embankment, then traveled sixty feet partly over the embankment until the trailer upset, pulling tne rear end of the car around over the embankment, and causing the car to turn over on its top in a ditch from a drain under the highway.
The evidence shows that the six occupants of the automobile at the time of the accident had passed over the road “a good many times” in the preceding two months — in the months of November and December — and the last time about a week before the accident. In the case of Margaret M. Smith v. State Road Commission, 1 Ct. Claims (W. Va.) 258, we held as follows:
“When an adult woman of good intelligence, while driving her husband’s automobile on a state highway passes a hole on one side of said highway caused by a *221 break or slip on the rock base of said highway, which hole she could or should have seen by the use of ordinary care, and on the same day, in the daytime thereof, while driving said automobile in the opposite direction drives it into said hole and the said automobile is precipitated over an embankment and she sustains personal injuries in consequence of said accident, she will be held to be guilty of contributory negligence barring a claim for an award for damages occasioned by said accident.”
It is made clear from the evidence that all six of the occupants of the automobile were familiar with the road having traveled it on different occasions as above stated. Presumably they knew of the existence of the depression' or hole in the road, and if they did not they should have known by reason of their acquaintance with the highway.
We do not think that the claimant has established a case entitling him to an award. Ah award is therefore, denied, and the claim dismissed.